## UNITED STATES *v.* BRIMS ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 212. Argued October 8, 1926.—Decided November 23, 1926.

1. A conspiracy of manufacturers of mill-work, building contractors, and union carpenters, to check competition from non-union-made

mill-work coming from other States, to accomplish which the manufacturers and contractors were to employ only union carpenters, who would refuse to install the non-union mill-work, is a violation of the Anti-Trust Act. P. 551.

2. It is a matter of no consequence that the purpose was to shut out non-union mill-work made within the State as well as that made without. P. 552.

3. The crime of restraining interstate commerce through combination is not condoned by inclusion of intrastate commerce as well. P. 553.

4. Upon certiorari, when the grounds of the Circuit Court of Appeals for reversing the District Court are found erroneous, this Court may reverse the judgment and remand the case to the Circuit Court of Appeals for examination of the other assignments of error which it did not pass upon. P. 553.

6 F. (2d) 98, reversed.

CERTIORARI (269 U. S. 545) to a judgment of the Circuit Court of Appeals reversing a conviction under the Sherman Act.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* and *Messrs. Rush H. Williamson* and *William D. Whitney,* Special Assistants to the Attorney General, were on the brief, for the United States.

*Mr. Charles Maitland Beattie,* with whom *Messrs. Joseph O. Carson* and *Robert R. Nevin* were on the brief, for Brims and other respondents designated as Union Defendants.

*Messrs. Robert W. Childs* and *Albert Fink* for the respondents designated as Millmen Defendants, submitted.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Respondents were charged with engaging in a combination and conspiracy to restrain interstate trade and commerce contrary to inhibitions of the Sherman Act, c. 647, 26 Stat. 209, and were found guilty by a jury. The Cir-

cuit Court of Appeals reviewed and reversed the judgment of conviction upon the sole ground of fatal variance between allegation and proof, or failure of proof to support the charge. 6 Fed. (2d) 98. They said—

" The indictment charged defendants with ' combining or conspiring to prevent manufacturing plants located outside of the City of Chicago and in other States than Illinois from selling and delivering their building material in and shipping the same to said City of Chicago.' . . . The proof, however, disclosed merely an agreement between defendants whereby union defendants were not to work upon nonunion-made millwork. . . . The agreement which the defendants entered into merely dealt with millwork which was the product of nonunion labor. It mattered not where the millwork was produced, whether in or outside of Illinois, if it bore the union label. The restriction was not against the shipment of millwork into Illinois. It was against nonunion-made millwork produced in or out of Illinois. We find no evidence which would support a finding that the agreement embodied in Article 3 of Section 3 was not the real agreement of the parties. Wherefore, we conclude there is a fatal variance and the evidence does not sustain the indictment."

They considered no other objection to the judgment of conviction, and the cause came here by certiorari because that point seemed to require further examination. We think it was wrongly decided.

The challenged combination and agreement related to the manufacture and installation in the City of Chicago of building material commonly known as millwork, which includes window and door fittings, sash, baseboard, molding, cornice, etc., etc. The respondents were manufacturers of millwork in Chicago, building contractors who purchase and cause such work to be installed, and representatives of the carpenters' union whose members are employed by both manufacturers and contractors.

It appears that the respondent manufacturers found their business seriously impeded by the competition of material made by nonunion mills located outside of Illinois—mostly in Wisconsin and the South—which sold their product in the Chicago market cheaper than local manufacturers who employed union labor could afford to do. Their operations were thus abridged and they did not employ so many carpenters as otherwise they could have done.

They wished to eliminate the competition of Wisconsin and other nonunion mills which were paying lower wages and consequently could undersell them. Obviously, it would tend to bring about the desired result if a general combination could be secured under which the manufacturers and contractors would employ only union carpenters with the understanding that the latter would refuse to install nonunion-made millwork. And we think there is evidence reasonably tending to show that such a combination was brought about, and that, as intended by all the parties, the so-called outside competition was cut down and thereby interstate commerce directly and materially impeded. The local manufacturers, relieved from the competition that came through interstate commerce, increased their output and profits; they gave special discounts to local contractors; more union carpenters secured employment in Chicago and their wages were increased. These were the incentives which brought about the combination. The nonunion mills outside of the city found their Chicago market greatly circumscribed or destroyed; the price of buildings was increased; and, as usual under such circumstances, the public paid excessive prices.

The allegations of the bill were sufficient to cover a combination like the one which some of the evidence tended to show. It is a matter of no consequence that the purpose was to shut out nonunion millwork made

within Illinois as well as that made without. The crime of restraining interstate commerce through combination is not condoned by the inclusion of intrastate commerce as well. The applicable principles have been sufficiently indicated in *Montague & Co.* v. *Lowry,* 193 U. S. 38; *Loewe* v. *Lawlor,* 208 U. S. 274; *Eastern States Lumber Association* v. *United States,* 234 U. S. 600, 612; *Coronado Coal Co.* v. *United Mine Workers,* 268 U. S. 295, 310.

To explore the record and pass upon all other assignments of error presented to the court below would require unreasonable consumption of our time. We may properly require its view in respect of them.

An order will be entered reversing the judgment of the Circuit Court of Appeals and remanding the cause to that court for further proceedings in harmony with this opinion.

*Reversed.*

Mr. Justice Stone took no part in the consideration or decision of this cause.