**E. G. SHINNER & CO., Inc., v. LAUF et al.**

**SAME v. KENNEDY et al.**

Civil Nos. 4593, 5239.

District Court, E. D. Wisconsin.

Jan. 24, 1941.

Karon & Weinberg, of Milwaukee, Wis., for complainant.

David Beznor, of Milwaukee, Wis., for defendants.

DUFFY, District Judge.

The motions now before the court involve two cases. The first is E. G. Shinner and Company, Inc., v. Edward Lauf et al., Civil Docket No. 4593, which will hereafter be referred to as the "Lauf Case"; the second is E. G. Shinner and Company, Inc., v. William Kennedy et al., Civil Docket No. 5239, which will hereafter be referred to as the "Kennedy Case". The plaintiff in each case is a Delaware corporation which owned and operated five retail meat markets in Milwaukee, Wisconsin.

The Lauf Case was commenced April 11, 1935, the complaint alleging that none of its employees belonged to the defendant union and had rejected repeated demands that they join same; that plaintiff was willing to permit its employees to join the defendant union; that said union demanded that plaintiff enter into a labor contract to employ only members of that union; that defendants entered into a conspiracy to coerce plaintiff to force its employees to join defendant union and to destroy plaintiff's business if it refused to yield to such coercion; that pursuant to such conspiracy, defendants commenced to picket plaintiff's markets on April 6, 1935. The complaint detailed the various acts which plaintiff claimed to be unlawful; alleged the amount in controversy exceeded $3,000; and asked that the defendants be enjoined from (1) seeking to coerce plaintiff to discharge its employees because they refused to join the defendant union, and (2) from picketing plaintiff's premises or from representing and stating that plaintiff was unfair in its dealings with employees and defendants, and (3) from annoying and molesting customers, etc.

On the motion for a preliminary injunction, evidence was taken; and on April 19, 1935, this court by Judge Geiger, upon findings of fact and conclusions of law, granted a temporary injunction. Defendants appealed to the Circuit Court of Appeals where the action of this court was affirmed. Lauf et al. v. E. G. Shinner & Co., Inc., 7 Cir., 82 F.2d 68. Thereafter a final hearing was had on October 13, 1936. The court again made findings of fact and conclusions of law. A permanent injunction was issued dated October 13, 1936, and filed October 15, 1936. This action was affirmed by the Circuit Court of Appeals in Lauf et al. v. E. G. Shinner & Co., Inc., 7 Cir., 90 F.2d 250. Upon appeal to the Supreme Court, the decree was reversed, and the mandate provided that the cause be remanded to the district court for further proceedings in conformity with the opinion. Lauf et al. v. E. G. Shinner & Co., 303 U.S. 323, 331, 58 S.Ct. 578, 582, 82 L.Ed. 872. The last paragraph of the majority opinion prior to the mandate reads as follows: "Fifth. Since the courts below were of opinion that a labor dispute, as defined by state and federal statutes, had not been shown, they did not pass on the questions of the legality, under the Wisconsin law, of the acts charged to have been done by the petitioners or the constitutionality of that law in legalizing any of such acts. As the case must go back for further proceedings, we express no opinion upon these questions."

The decision of the Supreme Court was announced on February 28, 1938. The defendants, without awaiting the return of the mandate or the record, and in spite of the terms of the injunction, immediately commenced a campaign of mass picketing, disturbances, threats, and a campaign of

violence. On March 11, 1938, plaintiff moved this court to punish certain defendants for contempt for violating the terms of the injunction granted October 13, 1936. By order dated March 18, 1938, this court continued the motion to punish for contempt until after the mandate of the Supreme Court had been received and continued the permanent injunction of October 13, 1936, until after the filing of such mandate and further order of the court. Upon request of counsel for the defendants, the plaintiff was ordered to file a surety bond of $1,000 as a condition of the continuance of the injunction. Such bond was filed. In open court the defendants through their counsel agreed to obey the injunction until the case was retried. On April 7, 1938, defendants through their counsel moved this court to dismiss the complaint "in accordance with the mandate of the Supreme Court." On April 22, 1938, plaintiff moved this court to make further findings of fact on the evidence and record in the cause as directed in the mandate of the Supreme Court, and to allow an amendment to the bill of complaint, and to permit the plaintiff to offer evidence on the amendment, and to grant a new trial. On April 22, 1938, the independent union of Shinner employees filed a petition to intervene. On April 25, 1938, this court, after hearing the motions, entered an order (1) denying defendants' motion to dismiss the complaint; (2) denying the motion of defendants to dissolve the injunction; (3) permitting amendment to the bill of complaint and granting a new trial, and giving defendants ten days to answer the amended complaint; and (4) adjourning the petition to intervene to May 7, 1938. The following day defendants filed affidavits of prejudice against Judge Geiger, and due to the inability to obtain another judge, no further hearings or actions were had thereon. The amended complaint alleged that Lauf had severed his connections with the union, and it added certain defendants who were then officers of the union, and alleged further that a written collective bargaining contract had been entered into by the plaintiff and the independent union on May 4, 1937. The complaint again set forth the various actions on the part of certain members of the defendant union, alleging in detail various acts of illegal conduct and setting forth, in particular, conduct that occurred immediately after the announcement of the decision of the Supreme Court. It was also alleged that demand had been made upon Milwaukee officials to protect the property of the plaintiff, but that such officials had failed and refused to give such protection or were unable to give it; that many thousands of dollars of loss had been suffered by plaintiff; and that irreparable injury would follow unless defendants were enjoined.

A so-called second amendment to the bill of complaint was filed on July 18, 1938, and a third amendment was filed on November 13, 1939, the latter alleging that plaintiff had suffered damages in the sum of $10,000 as a result of defendants' violence and destruction of property. No permission was granted by the court to file the second amendment to the bill of complaint, nor was there any judge sitting in this court who could have given such permission; it is alleged that no other judge was available. The present judge of this court was sitting at the time the alleged third amendment was filed, but no permission to file or serve same was requested. There was an amendment to the petition to punish for contempt dated July 22, 1938, which set forth the violence committed by Edward Borzykowski, who was secretary of the defendant union, and Edmund Pietruszynski. Criminal prosecutions in the State courts were commenced against the two last named, and both were sentenced to imprisonment. The confession of Pietruszynski, which has been offered in this proceeding, shows that he broke windows in the Shinner stores, burned a truck, threw stench bombs, etc., and shot bullets through windows of restaurants where it was thought Shinner's meats had been purchased; also that the violence had been planned at defendant union headquarters and that he acted under the directions of the secretary of the defendant union and was paid therefor by union funds.

The second case (Kennedy) was commenced in March of 1938, at a time when the mandate in the Lauf Case had not been received from the Supreme Court and there was no record before this court upon which proceedings could be had. The Mayor, Chief of Police, and Sheriff were joined as parties defendant, but action as to them was later dismissed by stipulation. Motion was made to dismiss the complaint in the Kennedy Case for failure to state a cause of action, but before that motion could be heard, affidavits of prejudice had been filed

against Judge Geiger; so no hearing was had upon that motion.

No further action was taken in this court until the present judge, in an endeavor to dispose of all old cases on the calendar which he had "inherited", placed said cases on the Progress Calendar. Upon the calling of this calendar, the court asked counsel to take some action to bring these cases to a final conclusion. Thereupon counsel for the defendants moved the dismissal of both cases. Plaintiff's counsel moved to make the permanent injunction absolute, and thereafter amended said motion asking the court to make further findings of fact and conclusions of law upon the record now before the court, including the exhibits offered by the plaintiff.

■ The only purpose of the Kennedy Case was as a stopgap, pending the return from the Supreme Court to this court of the mandate and record in the Lauf Case. All of the issues now before this court are raised in the Lauf Case. The motion to dismiss the Kennedy Case, Civil Docket No. 5239, will be granted.

A proper determination of the motions now before the court in the Lauf Case depends in a large measure upon an interpretation of the opinion of the United States Supreme Court when this case was before it: Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872. The court there said (page 327 of 303 U.S., page 580 of 58 S.Ct., 82 L.Ed. 872): "* * * As the acts complained of occurred in Wisconsin, the law of that state governs the substantive rights of the parties. But the power of the court to grant the relief prayed depends upon the jurisdiction conferred upon it by the statutes of the United States."

The court further held that the district court erred in holding that no labor dispute, as defined by the Laws of Wisconsin, existed between the parties. Id., 303 U.S. page 327, 58 S.Ct. 578, 82 L.Ed. 872.

The court further decided that the district court erred in not applying the provisions of Sec. 103.53 of the Wisconsin Labor Code, which declared certain conduct lawful in labor disputes. Id., 303 U.S. page 328, 58 S.Ct. 578, 82 L.Ed. 872.

At the time the foregoing decision was handed down, the provisions of the Norris-LaGuardia Act, Title 29 U.S.C.A. § 113, and the provisions of the Wisconsin Labor Code, as to the definition of a "labor dispute", were not in conflict. In fact, they were quite similar. However, since the date of that decision, Chapter 25 of the Laws of 1939 has been enacted by the Wisconsin Legislature, which gives a new definition of what constitutes a "labor dispute". The new provision is found in Sec. 103.62 (3) of the Wisconsin Statutes: "The term 'labor dispute' means any controversy between an employer and the majority of his employes in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives. * * *"

The new Labor Code, known as "The Employment Peace Act", and the foregoing provision, have been considered by the Wisconsin Supreme Court, and upheld. Hotel and Restaurant Employees' International Alliance, Local No. 122, et al. v. Wisconsin Employment Relations Board, Plankinton House Company, et al., decided November 8, 1940, 236 Wis. 329, 294 N.W. 632.

■ When the United States Supreme Court stated (page 327 of 303 U.S., page 580 of 58 S.Ct., 82 L.Ed. 872): "* * * As the acts complained of occurred in Wisconsin, the law of that state governs the substantive rights of the parties," it apparently held that the Wisconsin statutory definition of a "labor dispute" was controlling. This is borne out by the other references which the court in its opinion made to the Wisconsin Labor Code. The facts in the present case would clearly constitute a labor dispute under the Norris-LaGuardia Act, Title 29 U.S.C.A. § 113, and also under the decisions of the Supreme Court in New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012, and Milk Wagon Drivers' Union, Local No. 753 et al. v. Lake Valley Farm Products, Inc., et al., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. ——, decided November 18, 1940. It is just as clear that the facts here involved do not constitute a labor dispute under the present Wisconsin law, and it is that law which is controlling henceforth, as in issuing an injunction, the court must look to the future.

■ The Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., is premised entirely upon there being a labor dispute. Sec. 101 starts out: "No court of the United States * * * shall have jurisdiction to issue any * * * temporary or permanent injunction in a case involving or growing out of a labor dispute, * * *." The same wording appears in Secs. 104, 105, and 109.

In Sec. 110, the wording is: "Whenever any court of the United States shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, * * *." It would appear from these quotations, in the light of the Supreme Court's decision heretofore mentioned, that the definition of "labor dispute" would depend upon the provisions of a State's statutory law, but that if there were no such definition by State law, the definition in the Act itself (Sec. 113) would govern.

However, Sec. 107 of the Act, which relates to the issuance of the injunctions, the hearing, findings of the court, etc., has a different wording, as it provides: "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, *as herein defined,* except after hearing the testimony of witnesses in open court * * *." In no other place in the Act does it limit the definition of labor dispute, by the words "as herein defined". The place where labor dispute is "herein defined" in the Act is Sec. 113.

 Congress has the power to define and limit the jurisdiction of the inferior courts of the United States. Kline v. Burke Construction Co., 260 U.S. 226, 233, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Lauf v. E. G. Shinner & Co., supra, 303 U. S. page 330, 58 S.Ct. 578, 82 L.Ed. 872. Congress has the power to declare, and did declare, that in any case before a United States District Court, where the facts brought it within the definition of a labor dispute, as defined by Congress, the court should not issue an injunction unless ,it first made findings as specified. Sec. 7, 29 U.S.C.A. § 107, sets forth what such findings must be and declares that "no court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined" except after a hearing of a described character, "and except after findings of fact by the court, to the effect—(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained," and that no injunction "shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act

or actually authorizing or ratifying the same * * *." By subsections (b) to (e) it is provided that relief shall not be granted unless the court finds that substantial and irreparable injury to complainants' property will follow; that as to each item of relief granted greater injury will be inflicted upon the complainant by denying the relief than will be inflicted upon defendants by granting it; that complainant has no adequate remedy at law; and that the public officers charged with the duty to protect complainants' property are unable or unwilling to provide adequate protection.

 The judge of this court who heard the evidence has heretofore ordered a new trial. It is apparent from the opinion of the Supreme Court that it contemplated a further hearing herein. The plaintiff should have the opportunity to offer evidence, in an endeavor to establish a proper basis for the findings by this court, which are a necessary prerequisite for the issuance of an injunction in a labor dispute, as defined by the Norris-LaGuardia Act.

The defendants earnestly contend that a further hearing is unnecessary, and that said actions should be dismissed because the case has become moot. They point out that there has been no picketing since August 21, 1938. They claim the record discloses no threats of unlawful acts or injuries to the plaintiff, at least since said date; and that a court of equity acts with respect to present and future conditions, rather than solely on those existing when the suit was brought.

However, the conduct of certain of the defendants in this case has been such that the plaintiff can have no assurance of future orderly and lawful actions on their part. In spite of the terms of an injunction of this court, and prior to the return of the record and mandate of the Supreme Court, they conducted themselves in a disorderly and unlawful manner. While the arrest and imprisonment of the secretary of the union and his accomplice may have had something to do with bringing rowdyism to an end, from the record the entire cessation of such actions dates from the agreement of their counsel in open court to obey the injunction until this case could be retried.

The motion of the defendants to dismiss will be denied, and an order may be entered setting a date for a hearing. At this hearing the question of amendments to the com-

plaint will first be considered. Thereafter the petition of the independent union to intervene will be considered; likewise all matters relating to the alleged contempt by certain of the defendants. The defendants will have an opportunity to answer any further amendments that may be allowed, as well as the amended complaint now on file. The hearing will then be resumed to permit the parties to offer such evidence as they deem pertinent.