## J. J. NEWBERRY CO. v. RETAIL CLERKS' UNION LOCAL 655 et al.

### No. 4716.

District Court, E. D. Missouri, E. D.
July 9, 1946.

Wayne Ely, of St. Louis, for plaintiff.

Allen H. Whittington, of St. Louis, for defendants.

HULEN, District Judge.

Plaintiff seeks a temporary restraining order against defendant union and certain.

of its members, and permanent injunction. Application for temporary restraining order is now before the Court after notice to defendants. The sole question to be ruled is whether a labor dispute exists between plaintiff and defendants. Plaintiff concedes the Court is without jurisdiction in the cause, Norris-LaGuardia Act[1], Title 29 U.S.C.A. §§ 107–113, if a labor dispute exists.

Allegations of the petition pertinent to the inquiry are as follows: Plaintiff, a Delaware corporation, is about to open a store in Maplewood, St. Louis County, Missouri. It is now engaged in repairing and altering the building preparatory to receiving general merchandise. Defendant Retail Clerks' Union, Local No. 655, with other defendants named, is picketing the Maplewood premises. Truckers refuse to cross the picket lines. Plaintiff's preparations to open business have thereby been halted. It is alleged no labor dispute exists between plaintiff and any of defendants in connection with the "opening, operating, and maintaining of" the Maplewood store; that plaintiff has not employed and does not now employ any clerks at such store; that there are no persons connected with the opening, operating, and maintenance of such store who are eligible for membership in such Retail Clerks' Union, Local No. 655; and that the Union would not accept any of the present employees at said store into its membership. It is alleged the purpose of defendants' activity is to force "plaintiff to recognize defendant Retail Clerks' Union, Local No. 655, as exclusive bargaining agent for all clerks to be employed by plaintiff at said store," and to prevent plaintiff "from opening a store at said location * * * until plaintiff will agree in advance" to recognize the defendant union as exclusive bargaining agent for all eligible employees "to be employed by plaintiff at said store." Explanation of refusal to agree to defendants' demands is given by plaintiff that it "has no lawful right or privilege to designate said Retail Clerks' Union, Local No. 655, as bargaining agency" for plaintiff's prospective employees, because the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., guarantees "to each and every employee the right to select a bargaining agency of his own * * * without any interference or restraint upon the part of his employer." Plaintiff states it has offered to recognize defendant union as bargaining agent if the majority of its employees should choose defendant union as their bargaining agent. Defendant union has not applied to the National Labor Relations Board to be designated as bargaining agency and refuses to consent to an election, stating they do not believe they could "win such an election among plaintiff's employees."

During argument on application for temporary restraining order, further undisputed facts developed. Defendants have made no threats, used no force, nor committed any unlawful acts, as such, against plaintiff at the Maplewood store. Plaintiff has other stores in the St. Louis area now in operation and there are concededly labor disputes now in progress or the subject of negotiation with reference to those stores. At the meeting between representatives of plaintiff and defendant union, at which offers of compromise were made by plaintiff (petition paragraph 12), labor disputes existing with reference to other stores were discussed. At this meeting plaintiff took the position that each store should be treated as a unit. Defendants' position was that plaintiff's employees had been "coerced and scared" against voting to join defendant union, and an election would serve no purpose, and stood on their demand for a contract recognizing it as sole bargaining agent for each of the stores. During argument, defendants' counsel stated there were employees of plaintiff at the Maplewood store eligible to membership in defendant union. This plaintiff denies. ,

Plaintiff concedes that if there were "employees at the Maplewood store" eligible to membership in defendant union, the controversy between plaintiff and defendants would constitute a labor dispute within the terms of the Norris-LaGuardia Act, but argues that since there are no em-

---

[1] Referred to herein as the Act.

ployees at the store eligible for membership in the defendant union, there can be no labor dispute within the terms of the Norris LaGuardia Act. Thus the issue is presented and thus we rule.

The case stated by plaintiff is unusual and the authorities meager. In Rohde v. Dighton, D.C., 27 F.Supp. 149 (Western District of Missouri), plaintiffs, as owners, operated a theater without employees, and sought to enjoin picketing on grounds services of employees not being involved, there was no labor dispute under the Act. The Court held there was a labor dispute and cited in support of the ruling, New Negro Alliance v. Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf et al. v. Shinner, 303 U.S. 323, 58 S.Ct. 578, 82 L. Ed. 872, and Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229. In each of the cases cited there was an employer-employee relationship. In the New Negro Alliance case there was no dispute between the employer and his employees, but the case involves an attempt upon the part of the negro organization to force employment of members of the negro race. In the Lauf case, there was no controversy between the employer and his employees. The union demanded the employer require its employees to join the union and make it their bargaining agent. In the Senn case, one issue was a demand by the union that the employer refrain from doing his own work. The employer had other employees whom the union desired to bring into the organization. We believe the case of Levering & Garrigues Co. et al. v. Morrin et al., 2 Cir., 71 F.2d 284, 286, has application here. The controversy was between an association of employers and an association of employees in the same industry. The employees' association was endeavoring to arrange terms of employment. Members of the employers' association, operating on an open shop basis in the construction of buildings, employed non-union labor. The employees' association notified "owners, architects, and contractors * * * engaged in the [building business]" that members of the union would cease and refuse to perform any work or to remain in any relationship of employment with them,

if the sub-contracts let for the erection of steel did not provide for the closed shop. The Master found "defendants did not stand in direct relationship of employer and employee with the" employers' association. The Court held "under the statute, a District Court cannot restrain the notifying of parties by interested individuals * * * of an intention to refuse to work * * *. The fact that the notification and the publicity will result in coercing the parties informed and cause them to refrain from contracting with the appellees cannot be taken into consideration, for the court is without power to prevent such notification. The court has not the power or authority to issue an injunction against these appellants who are engaged in a controversy arising out of an attempt to establish a closed shop by notifying general contractors and architects of an intention of members of a union to refuse to work." (Emphasis added.) The case at bar relates to future events and attempt of the union to establish labor relations in regard to work to be performed under contracts of employment not yet made. So did the Levering case.

Plaintiff has cited the case of United Electric Coal Companies v. Rice (7 Cir., 1935, 80 F.2d 1, 5), to sustain its position of no labor dispute. That was a case of conflict between rival unions in which the employer was the innocent—but suffering —bystander. The employer had no dispute with its employees. The Court held that a labor dispute, to come under the Act, must be "one between the employer and the employee or growing directly out of their relationship." This ruling is contrary to the decision of the Supreme Court in New Negro Alliance v. Grocery Co., supra [303 U.S. 552, 58 S.Ct. 708], 1937. The latter case holds "those having a direct or indirect interest" in conditions or terms of employment, may disseminate facts respecting such terms and conditions of employment, and are within the law in that such activity under such conditions is not subject to injunction, absent "fraud, breach of the peace, violence, or conduct otherwise unlawful." Plaintiff cites a number of cases interpreting the National Labor Relations Act, to the effect that an

employer is not required to bargain with a union, without proof that such union represents a majority of the workers. Under this law an employer is required to bargain with a union representing a majority of the workers. Such question is not in this case. The question here is whether a labor dispute exists. There is no statute requiring plaintiff to bargain with defendant union. Defendant is using "economic pressure" to force its recognition. Nor are we here called upon to pass on the legality of any contract. None is in existence.

■ Does the Act, when given the liberal and broad construction called for (see United Electric Coal Companies v. Rice, supra), lend itself to plaintiff's view? Sec. 113, subparagraph (c) reads as follows, as applied to this case, "The term 'labor dispute' includes any controversy concerning * * * representation of persons (term employe is not here used) in * * * seeking to arrange terms or conditions of employment (there is no restriction here to present or past employment), regardless of whether or not the disputants stand in the proximate relation of employer and employee."

Lay this statute down with the dispute between plaintiff and defendant and what results? We find defendants engaged in "seeking to arrange terms or conditions of employment" of the "persons" whom plaintiff is about to employ in its Maplewood store, even though defendants are not employees of plaintiff. This purpose plaintiff has and still is resisting. Result, a dispute about terms (that employees shall be members of the Union) of employment of plaintiff's employees about to be taken on.

What would ordinarily be understood by the term "labor dispute" has been greatly enlarged by the statutory definition in Section 13 of the Norris LaGuardia Act, 29 U.S. C.A. § 113. Plaintiff's able counsel earnestly argues that absent an employer-employee relationship, there can be no labor dispute. At first impression, such would seem to be the case. But absence of an employer-employee relationship at a given location of a chain store operator, where preparations are being made for the creation of that relationship, would seem to be no stronger

case against the existence of a labor dispute than when an employer and its employees are in perfect accord, with no disagreement between them. As to the latter case, there are numerous authorities holding efforts of the labor union to force the employer to recognize it as bargaining agent and the employees to become members of a union, constitutes a labor dispute within the meaning of the Norris LaGuardia Act. (See Lauf et al. v. Shinner, supra. This decision, by implication, would overrule cases like the Valley Mould & Iron Corporation v. N. L. R. B., 7 Cir., 116 F.2d 760, cited by plaintiff, if the latter case is subject to the interpretation given it by plaintiff. In our opinion the case does not apply to the facts of the present case.) Nor do we think the case as put by plaintiff any stronger than that of an employer who finds itself in agreement with its employees and two rival unions competing for the power of representation of the employees, with resultant damage to the employer's business through a controversy in which it is not concerned. In such circumstances, a labor dispute has been held to prevail and injunctive relief denied. Sharp & Dohme v. Storage Warehouse Employees Union, D. C., 24 F.Supp. 701. For a case where a labor dispute was held not to exist, see Columbia River Co. v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 522, 86 L.Ed. 750. A Pacific Coast fishermen's union, acting as a collective selling agency for fish caught by its members, sought to control the disposition of the product. The Court held the controversy was not within the regulation of the Norris-LaGuardia Act and that the latter was not "intended to have application to disputes over the sale of commodities." We conclude the weight of authority is against plaintiff's position.

But can the decision in this case be confined within the narrow limits laid down by plaintiff? It is conceded plaintiff has several stores in the St. Louis area, including Maplewood; that excepting the Maplewood store all have employees of plaintiff who are subject to membership in defendant union; that defendant union is engaged in a labor controversy regarding the employees of the other stores; that plaintiff has negotiated with representatives of de-

fendant union the labor dispute with reference to the other stores, and during the same conference the controversy surrounding the Maplewood store was a subject of discussion. Is it proper to infer from these facts that the union is attempting to organize plaintiff's stores in the St. Louis area and force plaintiff to sign a closed shop agreement, and the Maplewood store is a part and parcel of the controversy and is inseparable from it? If the answer is yes —and we conclude it is—the plaintiff concedes a labor dispute is involved in this case.

By argument, counsel for plaintiff urged the proposition that the defendant union is an "out-law" attempting by unlawful means to compel plaintiff's employees against their will and in violation of their rights to join the defendant union and to compel the plaintiff, in order to prevent the destruction of its business, to violate the law and force its employees to join the defendant union, and for these reasons no labor dispute in this case exists as a matter of law. The National Labor Relations Act imposes the duty upon employers to bargain collectively only with the chosen representatives of their employees and the implied duty is not to bargain with any one else. N. L. R. B. v. Jones & Laughlin Steel Co., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. It also seems justifiable for plaintiff to charge defendant union is attempting to circumvent the provisions of the National Labor Relations Act in respects mentioned and force recognition of itself as the exclusive bargaining agent of plaintiff's employees, irrespective of what their choice may be in the matter.

Plaintiff's brief presents a strong argument that defendants should be bound to observe the terms of the Wagner Act that give to plaintiffs' employees the right to select their bargaining agent, but we are dealing with a statute that has studiously avoided equality of responsibility of employer and labor. The Wagner Act protects workers from interference from employers in choosing their bargaining agent. It does not provide like protection from a union. That is the conclusion we come to from a reading of the cases we shall pres-

ently refer to. The Norris LaGuardia Act failed to make a situation such as plaintiff presents a ground for injunction and an exception under the Act. While some of the lower courts have ruled, in effect, that "motive" for picketing may be inquired into in passing on right of an employer to an injunction, as plaintiff contends, yet the ruling of the Supreme Court is to the contrary. Regardless of what the Court's personal views may be on this aspect of the controversy, if the matter has been ruled by a higher court, that ruling must be followed.

In New Negro Alliance v. Grocery, supra, the Supreme Court of the United States said, relative to the definition of a labor dispute in the Norris LaGuardia Act, "The Act does not concern itself with the background or the motives of the dispute." In the case of Lauf v. Shinner, supra, the union made demand upon the employer to require its employees, as a condition of their continued employment, to become members of the union. The employer left the decision to the employees, and they refused to join. The union had not been chosen by the employees to represent them in any matter connected with their employment. To coerce the employer to require its employees to join the union and accept it as a bargaining agent and as a condition of continuing employment and for the purpose of injuring and destroying the business of the employer, the union picketed the employer, charging it with being unfair to organized labor. The District Court held that no labor dispute existed. The Court of Appeals affirmed the decree (7 Cir., 90 F.2d 250), and the Supreme Court held (303 U.S. 323, 58 S.Ct. 578, 582, 82 L.Ed. 872) that the District Court erred in holding that there was no labor dispute. "The Court of Appeals erred in holding that the declarations of policy in the *Norris LaGuardia Act* and the Wisconsin Labor Code, to the effect *that employes are to have full freedom of association, self organization, and designation of representatives of their own choosing, free from interference, restraint, or coercion of their employers, puts this case outside the scope of both acts, since respondent cannot accede to the petitioners' demands upon it without disregarding the policy de-*

*clared by the statutes.* This view was expressed in the court's first opinion on the appeal from the issue of an interlocutory injunction, and the opinion on the appeal from the final order adopts what was said on the earlier appeal as the law of the case. *We find nothing in the declarations of policy which narrows the definition of a labor dispute as found in the statutes.* The rights of the parties and the jurisdiction of the federal courts are to be determined according to the express provisions applicable to labor disputes as so defined." (Emphasis added.)

Following the decision in the Lauf case, the Eighth Circuit Court of Appeals in Grace Co. v. Williams (8 Cir., 96 F.2d 478, 480) was presented with a case where a majority of the employees of plaintiff-employer organized a company union and selected their representatives for the purpose of collective bargaining. These representatives of employees demanded the right to be recognized by the employer as the exclusive representatives of all the employees of the employer for the purpose of collective bargaining. Defendant labor union picketed the employer's plant, charging it with unfair labor practices. On authority of the Lauf case, the Court of Appeals held, "We are of the opinion that a labor dispute was involved in this suit." These decisions are binding on this Court.

### Findings of Fact.

1. Plaintiff is a corporation organized under the laws of the State of Delaware, and defendants are residents of the State of Missouri, City of St. Louis.

2. Plaintiff is engaged in operating general merchandise stores on the chain store plan, and has been altering and arranging to open a store in Maplewood, St. Louis County, in addition to stores which it now has in operation in the City of St. Louis. Stores now in operation employ clerks eligible to membership in defendant union. Plaintiff has no contract with any union with respect to employees now engaged in opening its store in Maplewood, nor with regard to employees to be used there when the store is in operation.

3. Defendants are now engaged in picketing the building in Maplewood in which plaintiff is preparing to operate its business, and because employees of trucking firms refuse to cross the picket line, plaintiff is unable to obtain fixtures and merchandise to open the store.

4. Defendants have used no force nor committed any unlawful acts in picketing plaintiff's Maplewood store.

5. Other stores in the City of St. Louis now in operation by plaintiff have been picketed; there have been injunctions issued in respect to the picketing operations by state courts; and labor disputes exist with respect to such other stores.

6. Defendants are demanding, with respect to the Maplewood store of plaintiff, that the plaintiff sign a contract agreeing to employ only members of defendant union as clerks in the store, or those who agree to become members of the defendant union.

6. Plaintiff has refused to sign such character of contract, on the ground that under the National Labor Relations Act employees are entitled to choose their own bargaining agent, and plaintiff, as employer, is prohibited from in any manner coercing its employees in the selection of a bargaining agent, and that for plaintiff to sign such a contract and carry out its terms would be in violation of the National Labor Relations Act.

7. Plaintiff and defendant have had conferences regarding the controversy with regard to the Maplewood store and the labor disputes between plaintiff and defendant with respect to plaintiff's St. Louis stores, and in such conferences the dispute between plaintiff and defendant with respect to all the stores has been the subject of discussion.

8. The complaint alleges that plaintiff has invested more than $10,000 in the store building, fixtures, furniture, and furnishings in the Maplewood store.

9. The complaint does not allege, and on hearing no showing was made with respect to the jurisdictional requirements set forth in subparagraphs (a), (c), and (e) of Section 7, 47 Stat. 71, Title 29 U.S.C.A. § 107. No testimony of witnesses was offered at the hearing.

### Conclusions of Law.

■ 1. A labor dispute within the provisions of Section 13, 47 Stat. 73, Title 29 U.S.C.A. § 113, exists between plaintiff and defendants with respect to terms and conditions of employment at plaintiff's Maplewood store.

■ 2. This Court is without jurisdiction in the subject matter under the terms and provisions of Section 7, 47 Stat. 71, Title 29 U.S.C.A. § 107.

3. This Court is without jurisdiction because there is no proof that the amount in controversy brings the cause within the jurisdiction of the Court. (Although the Court has reached the conclusion it is without jurisdiction in this case, we are passing on the merits of the bill as to the right of plaintiff for a temporary restraining order so that in event of appeal, if the higher Court should hold this Court has jurisdiction, the case will be expedited and not require a remand for this Court to pass on the issue of the right of plaintiff to the order sought.)

### Order

Plaintiff's motion for a temporary restraining order is denied.